UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MONIQUE L. COOPER,                    )
                                      )
            Plaintiff,                )
                                      )
v.                                    )        CIVIL NO.  1:19cv100
                                      )
EATON CORPORATION,                    )
                                      )
            Defendant.                )

<u>OPINION AND ORDER</u>

This matter is before the Court on a motion for summary judgment filed by the Defendant, Eaton Corporation ("Eaton"), on May 18, 2020.  Plaintiff, Monique L. Cooper ("Cooper"), filed her response on August 31, 2020, to which Eaton replied on September 21, 2020.

Also before the Court is a motion to strike plaintiff's affidavit, filed by Eaton on September 21, 2020.  Cooper responded to the motion on October 1, 2020, to which Eaton replied on October 8, 2020.

For the following reasons, the motion to strike will be granted in part and denied in part, and the motion for summary judgment will be granted.

<u>Standard of Review</u>

A court must grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). Material facts are those facts that are outcome-determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). To survive summary judgment, the non-movant must muster specific, admissible evidence permitting a reasonable jury to find in her favor. *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Although

the non-movant receives the benefit of all facts and reasonable inferences, the non-movant cannot rely upon inferences supported by mere speculation or conjecture. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). Self-serving generalizations lacking factual support in the record also cannot preclude the entry of summary judgment. *Taylor v. ADS, Inc.*, No. 00 C 7554, 2002 U.S. Dist. LEXIS 14308, *16-18, and n. 4 (N.D. Ill. Aug. 2, 2002) (citing *Albiero v. City of Kankakee*, 246 F.3d 927, 833 (7th Cir. 2001); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993)). What is more, neither legal argument alone, nor opinions not based on observation or first-hand experience, will withstand a motion of summary judgment. *Taylor*, 2002 U.S. Dist. LEXIS 14308, at *18 n. 4.

<u>Discussion</u>

Eaton is a power management company that provides energy-efficient solutions to help customers manage electrical, hydraulic and mechanical power efficiently, safely and sustainably. (Declaration of Rebecca Arterburn at ¶ 3.) Eaton has a facility location in Auburn, Indiana "(Auburn Plant") (*Id*. at ¶ 4.) At its Auburn Plant, Eaton manufactures clutch components for the global commercial vehicle industry. (*Id*. at ¶ 5.) Cooper is a current employee at Eaton's Auburn facility, working as an assembler in the Assembly Department. (Deposition of Monique Cooper, at 43:1-5.) Mr. Michael Jackson also worked in the Assembly Department for a period of time with Cooper. (*Id*. at 63:15-16; Arterburn Decl. at ¶ 7.) Jackson has never had supervisory authority over Cooper, as he is her peer. (Cooper Dep. at 63:8-14.) Arterburn directly supervised Cooper and Jackson during the relevant timeframe. (Arterburn Decl. at ¶ 7.)

Eaton states that it maintains a Harassment-Free Workplace Policy that notifies employees Eaton will not tolerate any form of workplace harassment. (Cooper Dep. at 48:14-49:15);

(Declaration of Emily Jahr, at ¶ 8, Defendant's Ex. A.) Eaton further states that it takes prompt remedial action designed to stop the harassment. (Jahr Decl. at ¶ 8, Def. Ex. A.) Depending upon the individual circumstances, appropriate action could include, among other actions, reassignment, transfer, reprimand, suspension or other disciplinary action, up to and including termination. *Id*. Eaton's policy also explains that retaliation is not tolerated and those who participate or bring complaints concerning harassment will be protected from retaliation. Eaton believes Cooper was aware of this policy. *Id*.

In addition, Eaton maintains workplace rules governing how employees are expected to behave. (Jahr Decl, at ¶ 9, Def. Ex. B.) One of the Auburn Plant rules delineates Eaton's core value of respect. (*Id*.) Specifically, it is a violation of the Auburn Plant rules to engage in "disrespectful, disruptive, or inappropriate language or behavior towards peers…." If an employee violates Eaton's rules, progressive discipline will be issued generally as follows:

> Step One (1) – Verbal Warning – Remains on employee's record for one (1) year
> Step Two (2) – Written Warning – Remains on employee's record for eighteen (18) months
> Step Three (3) – Five 5 Days Off – Remains on employee's record for two (2) years
> Step Four (4) – Discharge

(*Id*.)

On October 31, 2017, Arterburn held a daily start-up meeting in the Assembly start-up area as usual. She led her team through a series of stretch exercises and discussed the day's assignments and goals. (Arterburn Decl. at ¶ 8.) Approximately 17 employees attended this start-up meeting. (*Id*.) During the meeting, Arterburn observed Jackson touch Cooper near her waist. (Cooper Dep. at 70:6-71:17, 77:19-23); (Arterburn Decl. at ¶ 9.) This contact occurred on

the outside of Cooper's clothing. (Arterburn Decl. at ¶9); (Declaration of Maria Hiller 4 at ¶ 18.) This was the first time Arterburn had ever observed Jackson touch Cooper in this manner. (Arterburn Decl. at ¶ 10.)

Immediately after the October 31, 2017, start-up meeting, Arterburn approached Cooper regarding the incident to ask if she was alright. (Cooper Dep. at 79:17-80:21); (Arterburn Decl. at ¶ 11.) Arterburn also told Cooper that she was going to report the incident. (Cooper Dep. at 79:17-80:21); (Arterburn Decl. at ¶ 14.) Cooper confided in Arterburn that Jackson had similarly touched her the prior day. (Arterburn Decl. at ¶ 15.) This was the first time Arterburn learned of the October 30, 2017, incident. (*Id*). Cooper and her Union Steward, John Cain, went to the Human Resources Department (hereinafter "Human Resources") and reported this incident to Human Resources Manager Emily Jahr ("Jahr"). (Cooper Dep. at 80:22-81:8); (Jahr. Dep. at ¶ 11.)

Cooper explained Jackson's conduct that had occurred on October 31, 2017, and the prior day. (Cooper Dep. at 78:22-79:16); (Jahr Decl. at ¶¶ 11, 13-16.) Specifically, Cooper said that on October 30, 2017, Jackson touched her lower waist. (Cooper Dep. at 68:3-69:1; 91:24-92:3); (Jahr. Decl. at ¶ 13); (Errata Sheet to Deposition of Monique Cooper, at p. 2.) Cooper said she did not initially report the October 30, 2017, incident because she addressed it with Jackson directly. (Cooper Dep. at 69:17-19; 91:24-92:3); (Jahr Decl. at ¶ 15); (Cooper Dep. Errata at p. 2.) This was the first time Jahr learned of the October 30, 2017 incident. (Jahr. Decl. at ¶ 16.)

Cooper also said that on October 31, 2017, Jackson briefly touched her three times that day, with each contact lasting only seconds. (Cooper Dep. at 77:19-23; 91:24-92:3); (Jahr Decl. at ¶ 12); (Cooper Dep. Errata at p. 2.) Specifically, she said Jackson initially poked her

4

approximately one inch above her waistline (Cooper Dep. at 71:25-72:8); then approximately three inches above her waistline (*id*. at 72:9-16); and, lastly, he used two fingers to poke the bottom side of her bra. (*id*. at 75:15-19. Prior to these two isolated incidents, Cooper and Jackson had a cordial relationship. (*Id*. at 64:20-22.)

However, in her affidavit, filed with her response to the motion for summary judgment, Cooper describes the touching incident as follows:

> I was sexually harassed by a male co-employee at Eaton Corporation by the name of Michael Jackson. On October 30, 2017, he approached me from behind and placed his hands on my waist, and I told him, "Stop, I'm not fucking playing with you." Then on October 31, 2017, he again approached me from the back and placed his hands on my waist and I turned around and said, "What the fuck is your problem…I'm not fucking playing with you! Stop!" Then Mr. Jackson proceeded to move his hands further up my waist and again I told him to "Stop. I'm not playing…" After telling him this several times he moved his hand underneath my breast, and I shouted very loudly, "Stop, I'm not playing with you, what the fuck is wrong with you!" My Supervisor Becky approached me asking if I was ok. I told Becky I don't know what his problem is -- I've never played with him. My Supervisor Becky went to Human Resources and I was called into the office to tell my story.

Cooper Aff. at ¶ 3.

Eaton asserts that Jahr investigated Cooper's allegations by interviewing Cooper and Jackson. (Jahr Decl. at ¶ 18.) Jackson said he was "just joking around" and he kept tapping her back or hips to get her attention. (*Id*. at ¶ 19.) Jahr substantiated that Jackson touched Cooper for seconds on the outside of her clothing on October 30 and 31, 2017. (*Id*. at ¶ 21.) Eaton claims that Cooper concedes Eaton promptly and adequately investigated her allegations. (Cooper Dep. at 87:20-88:11, 89:3-10.)

It is undisputed that after receiving Cooper's complaint Jahr immediately placed Jackson

5

on a three-day suspension. (*Id*. at 92:4-6); (Jahr. Decl. at ¶ 22.) She also placed Jackson on a Last Chance Agreement and physically separated Jackson from Cooper on the Assembly Line. (Cooper Dep. at 92:15-18); (Jahr Decl. at ¶¶ 23, 26); (Exhibit C to Jahr Decl., Copy of Last Chance Agreement).

The Last Chance Agreement provided, in pertinent part, "[a]ny further substantiated violations of the Harassment Policy throughout the duration of your employment with Eaton will result in termination." (Exhibit C to Jahr Decl.) Although Jackson explained during the meeting that he was "just joking around" and that he and Cooper had that kind of a friendship (Jahr Decl. at ¶ 19), Jahr reiterated to Jackson that the claimed nature of his friendship and/or his intent did not matter, and that his behavior was unacceptable. (*Id*. at ¶ 20.)

Before Jackson returned from his suspension, Eaton and Cooper agreed to have Cooper and Jackson physically separated by four employees. (Cooper Dep. at 106:3-5); (Jahr Decl. at ¶ 26.) Jackson returned to work on November 6, 2017. (Jahr Decl. at ¶ 25.) Eaton did, in fact, separate Jackson and Cooper by four employees (Cooper Dep. at 142:12-15); (Arterburn Decl. at ¶¶ 20-25); (Jahr Decl. at ¶ 26.) Working four employees apart meant Cooper and Jackson would not work on the same line. (Arterburn Decl. at ¶ 25.) During the relevant time period, there was at a minimum approximately 19 feet between lines. (*Id*. at ¶¶ 20-24, Ex. B.) Cooper never, in fact worked closer than four employees away from Jackson. (Cooper Dep .at 142:12-15); (Arterburn Decl. at ¶¶ 20-25); (Jahr Decl. at ¶ 26.) Cooper conceded in her deposition that working four employees apart was an adequate remedy. (Cooper Dep. at 89:3-10, 106:3-5.)

In January 2018, Cooper and Union Steward John Cain met with Jahr, and Cooper alleged when she looked up from her station, Jackson would stare at her, which made her uncomfortable.

(Jahr Decl. at ¶ 27.) Cooper never claimed the staring was sexual or threatening in nature. (*Id.* at ¶ 28.) On the same day, Cooper also alleged that when Jackson was in the break room, he sat directly behind her. (*Id.* at ¶ 29.) Cooper again said she felt uncomfortable but did not report any unwanted touching or comments by Jackson. (*Id.* at ¶ 30.) Cooper then requested to work seven people away from Jackson. (Cooper Dep. at 106:6-9); (Jahr Decl. at ¶ 31.) Jahr honored Cooper's request. (Cooper Dep. at 106:6-9, 107:3-7); (Jahr Dep. at ¶ 32.) Cooper understood that if she ever worked early overtime and believed she would have to work on the same line or job as Jackson she could pick a different job. (Cooper Dep. at 175:23-176:23.)

On January 4, 2018, Cooper submitted a grievance concerning Arterburn's compliance with the expanded distanced between Cooper and Jackson on the line. (Jahr Decl. at ¶ 33.) The grievance was settled, and Cooper's manager was reminded of the importance of maintaining seven people between Cooper and Jackson, with a note to Arterburn's file. (Arterburn Decl. at ¶ 34.)

On January 29, 2018, Jackson transferred out of the Assembly Department, of his own accord. (Arterburn Decl. at ¶ 35.) Cooper conceded in her deposition that Eaton adequately responded to her allegations of sexual harassment. (Cooper Dep. at 87:20-88:20, 89:3-10.)

Again, Cooper tells a slightly different story in her affidavit:

4.     On October 31, 2017 I went to Human Resources with my Union and told my story. A decision was made to suspend Michael Jackson for three (3) days, but he was returned on November 6, 2017 and he was still allowed to work with me.

5.     On November 6, 2017 my Supervisor Becky proceeded to place Mr. Jackson in the same rotation as me, and I asked my Supervisor if she could place him in a different rotation. At the time she said no problem but nevertheless he was allowed to work around me on November 6, 2017. I told my Supervisor Becky that I could not work with him (Mr. Jackson). My Supervisor told me I would have to return

to work with him. I went to my Union and I got no relief and I was told that I had to work with him by both the Company and the Union. So almost every day after that Mr. Jackson continued to follow me around into the breakroom and glare at me and watch me every day, and he smiled at me. I felt tormented.

6.    On January 12, 2018, Mr. Jackson came into the breakroom and sat behind me and hit my shoulder. I then got up and took a picture and went to my Union Steward and told him I had enough. My Union and I went to HR, and Emily told me that there was no stipulation on his returning, and I proceeded to tell them that I continued to feel tormented. Emily told me that she was going to have a strong talk with Michael Jackson, but nothing happened.

7.    I did report to Human Resources about Mr. Jackson touching my shoulder -- the same day it happened.

8.    When Ms. Arterburn approached me, she asked if I was ok and I said no, but that I would be fine. I never told Ms. Arterburn that I wasn't going to report the harassment. Rather, I just wanted to calm myself first. Ms. Arterburn did not urge me to report the incident. I never joked with Mr. Jackson and never "laughed off" his harassment. Rather, I opposed it and objected to it every time, and I reported the harassment to Human Resources. Human Resources made me continue to work with Mr. Jackson (the harasser), and this made me suffer emotionally, and I suffered mental anguish, and it made me feel uncomfortable and affected my ability to be at work and do my job. The harassment, and the aftermath when I had to continue to work with my harasser (Jackson) created a hostile environment, because I always feared working with Mr. Jackson and when the harassment would occur next.

(Cooper Aff. ¶¶ 4-8)

On February 13, 2018, John Cain went to Human Resources at the request of Assembly Department employee, Kristie Kendrick, to submit a complaint about Cooper's inappropriate workplace behavior and poor treatment of her coworkers. (Jahr Decl. at ¶ 36.) Eaton asserts that these complaints were unrelated to the investigation Jahr conducted into Cooper's prior complaints about Jackson. (*Id*.) Cooper acknowledged in her deposition that her peers complained to Human Resources about her failing to follow Eaton's core value of respect. (Cooper Dep. at 143:20-22.)

Jahr investigated the complaints of Cooper's coworkers by interviewing the following Assembly Department employees: John Cain, Adam Arnold, Brock Dieterich, Ellis Howard, Eric Applegate, King Kolbert, Kristie Kendrick, Mack Davis, Mike Letner, Josh Paden, Sam Schwartz, and Scott Claxton. (Jahr Decl. at ¶ 38.) (Ex. D to Declaration of Emily Jahr.)

Paden reported to Jahr that Cooper had yelled at him on December 16, 2017, when he attempted to retrieve a part to continue working. (Jahr Decl. at ¶ 39.) Paden reported this incident to his Union Steward, Cain. (*Id*. at ¶ 40.) Thereafter, Cooper approached Paden and Cain. (*Id*. at ¶ 41.) Paden reported to Jahr that "it was definitely a heated conversation." (*Id*. at ¶ 42.) Cain reported he "tried to calm [Cooper] and have her go back to work." (*Id*. at ¶ 43.)

Cain also reported that Cooper had been rude and disrespectful towards him. (*Id*. at ¶ 44.) Specifically, Cain said that when he entered the breakroom on February 1, 2018, Cooper looked at him and in a loud voice said, "If John would do his job this wouldn't be an issue." (*Id*. at ¶¶ 46-46.) Cain further reported that Cooper stood up and got closer to him and said, "You think you're so bad you're showing off to your buddies." (*Id*. at ¶ 47.) Cain reported he told Cooper she had "brought [him] into this conversation[ ], and what [she] was doing to [him] right now [was] disrespectful." (*Id*. at ¶ 48.)

Jahr met with Cooper and Union Steward Applegate regarding Cooper's peers' complaints. (*Id*. at ¶ 49.) Cooper requested Jahr further investigate the matter and provided a list of witnesses for her to interview. (*Id*. at ¶ 50); (Cooper Dep. at 153:8-10.) Jahr contacted each individual Cooper proposed: Dieterich, Howard, Applegate, Kolberg, and Davis. (Jahr Decl. at ¶ 51.) Jahr interviewed each individual who agreed to participate in the investigation. (*Id*. at ¶ 52.) Cooper concedes that Jahr handled the investigation properly by interviewing Cooper and the

9

additional witnesses she identified. (Cooper Dep. at 153:11-154:2.)

Based on her investigation, Jahr substantiated the allegations raised by Paden and Cain, and concluded Cooper's conduct violated Auburn's Plant Rule regarding Respect by exhibiting disrespectful behavior towards her peers on December 16, 2017, and February 1, 2018. (Cooper Dep. at 51:25-52:5, 148:6-8); (Jahr Decl. at ¶ 53.) Consequently, on April 4, 2018, Jahr issued Cooper a Step 1 Verbal Warning related to her violation of Auburn's Plant Rule regarding Respect. (*Id*. at ¶ 55); (Exhibit E to Jahr Decl.) The Step 1 Verbal Warning did not result in Ms. Cooper being suspended, demoted, or terminated; it did not cause a loss in pay or benefits; and it did not cause any other change in the terms of her employment. (Arterburn Decl. at ¶ 40); (Jahr Decl. at ¶ 58.)

Cooper filed a grievance regarding the Step 1 verbal warning. (Jahr Decl. at ¶ 59.) On November 14, 2018, Cooper's Step 1 Verbal Warning was downgraded to a "Note to File." (Jahr Decl. at ¶ 60); (Exhibit F to Jahr Decl.) The Note to File did not result in Cooper being suspended, demoted, or terminated; it did not cause a loss in pay or benefits; and it did not cause any other change in the terms of her employment. (Jahr Decl. at ¶ 61.)

Cooper alleges that her discipline was "unwarranted and fake and phony" and was retaliation for her complaints against Mr. Jackson. (Cooper Aff. at ¶¶ 9-11).

On or about June 5, 2018, the Human Resources Director for Commercial Vehicle Operations with Eaton Corporation, Maria Hiller ("Hiller"), received notice Cooper had filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("Charge"); (Hiller Decl., at ¶¶ 6, 8, 13.) In the Charge, Cooper alleged Jackson had previously placed his hands underneath her breast, which Hiller considered a new contention. (*Id*. at ¶ 9.) Cooper

10

further asserted in her Charge that after Jackson returned from his suspension, she was forced to work alongside him for four months, which made her uncomfortable, and that he stared at her, undressed her with his eyes, and sneered at her with a creepy smile "as if to say, 'I can do whatever I want to you . . . .'" (*Id*. at ¶ 10.) Cooper additionally alleged that Jackson came into the breakroom, sat behind Plaintiff, and hit her shoulder. (*Id*. at ¶ 11.) Finally, Cooper contended the Note to File was in retaliation for her complaints about Jackson. (*Id*. at ¶ 12.)

As several of the allegations contained in the Charge were new, Eaton conducted a second internal investigation, led by Hiller. (*Id*. at ¶ 14.) Hiller visited the Auburn Plant on July 18 and 19, 2018, to investigate Cooper's Charge allegations. (*Id*. at ¶ 15.) Hiller interviewed several witnesses over two days, including: Cain, Arterburn, Jackson, Sam Schwartz, and Craig Catterall. (*Id*. at ¶ 16.) Hiller concluded her investigation and prepared a report containing her findings and conclusions. (*Id*. at ¶ 17); (Exhibit A to Hiller Decl.) Specifically, and consistent with the October 2017 investigation, Hiller substantiated that Jackson briefly touched Cooper's lower sides towards the hip or higher near the ribs. (*Id*. at ¶ 18.) She could not, however, substantiate Cooper's allegation that Jackson touched the front of her body or her breasts. (*Id*. at ¶ 19.) She also substantiated the Note to File provided to Cooper based on the peer complaints was appropriate. (*Id*. at ¶ 20.)

Cooper contends Jackson harassed her one further time on October 2, 2018, after he had transferred out of the Assembly Department. (Cooper Dep. at 113:8-114:8.) Specifically, Cooper alleges on that date, Jackson walked into the Assembly Department to retrieve a tool from a cabinet. (Cooper Dep. at 112:13-25.) Cooper reported this incident to her supervisor at the time, Julia VanBuskirk ("VanBuskirk"). (Cooper Dep. at 111:6-112:12); (Ex. 3 at ¶¶ 62-67.) Cooper's

complaint concerned only his presence and him looking at her. (Cooper Dep. at 112:13-25.) On

October 3, 2018, VanBuskirk informed Jahr about Cooper's concern, and Jahr investigated. (Jahr

Decl. at ¶¶ 62-67); (Exhibits G-J to Jahr Dec.) Jahr determined Jackson was in the Assembly

Department for proper reasons, but she coached Jackson on the procedure to acquire tools

outside of his department. (Jahr Decl. at ¶ 68); (Exhibits G to Jahr Dec.)

Cooper never amended her Charge to include the foregoing incident as part of her claim of

sex harassment, and her Charge was dismissed by the EEOC on November 30, 2018.

In support of summary judgment, Eaton first argues that Cooper has failed to establish a

claim of sexual harassment.  To establish a sexual harassment claim under the hostile work

environment theory, Cooper must demonstrate: "(1) the work environment was objectively and

subjectively offensive, (2) the harassment complained of was based on gender, (3) the conduct

was either severe or pervasive, and (4) a basis for employer liability exists." *Hunt v. Wal-Mart

Stores, Inc.*, 931 F.3d 624, 627 (7th Cir. 2019). In general, relatively isolated instances of

non-severe misconduct will not support a hostile environment claim. *Lapka v. Chertoff*, 517 F.3d

974, 982 (7th Cir. 2008). Not all workplace unpleasantries give rise to liability under federal civil

rights laws, which do not guarantee a perfect work environment. *Vore v. Ind. Bell Tel. Co., Inc.*,

32 F.3d 1161, 1162 (7th Cir. 1994).

Eaton contends that Cooper cannot meet the first and third prongs of the test because the

conduct was not objectively or subjectively offensive or severe or pervasive.  Eaton argues that no

reasonable person could conclude the touching of a non-intimate area of the body was sufficiently

severe or pervasive as to alter the conditions of Cooper's employment and create a hostile work

environment. Eaton claims that Cooper has not alleged that the touching was sexual, that any

comments were made of a sexual nature, or that the conduct was frequent, humiliating or unreasonably interfered with her work performance. Eaton points out that Cooper confirmed that the duration of the conduct was a matter of seconds on two separate days. Jahr substantiated that Jackson touched Cooper for seconds on the outside of her clothing on October 30 and 31, 2017. (*Id*. at ¶ 21; Cooper Dep. at 77:19-23; 91:24-92:3) Eaton concludes that this is entirely insufficient to sustain a claim of sexual harassment due to a hostile work environment.

To be severe or pervasive enough to create a hostile work environment, the conduct must be extreme. The Seventh Circuit has even held that in cases where there has been a touching of an intimate part of the body, such conduct is not severe enough to establish a hostile working environment. To meet this high standard, the conduct must alter the conditions of employment. *Davidson v. Caravan Facilities Mgmt*., No. 1:18-CV-152, 2020 U.S. Dist. LEXIS 9829, at *25 (N.D. Ind. Jan. 17, 2020) (citing *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009)). "Whether conduct meets this bar depends on 'the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance.'" *Davidson*, 2020 U.S. Dist. LEXIS 9829, at *25.

Isolated incidents such as a hand on the shoulder, a brief hug, a peck on the cheek, a hand on the thigh, a kiss on the lips, or a pinch on the buttocks "may be considered insufficiently abusive to be described as 'severe' when they occur in isolation." *Swyear v. Fare Foods Corp*., 911 F.3d 874, 882 (7th Cir. 2018) (citing *Hostetler v. Quality Dining, Inc*., 218 F.3d 798, 808 (7th Cir. 2000)). In *Adusumilli v. City of Chi*., the Seventh Circuit found there to be no hostile work environment, as a matter of law, where a defendant's "most serious misconduct" was a

"mild . . . poke" of the plaintiff's buttocks. 164 F.3d 353, 362 (7th Cir. 1998). Similarly, the

Seventh Circuit affirmed a district court's grant of summary judgment on a sexual harassment

claim where the single asserted act of harassment was a slap to the female plaintiff's buttocks by a

male co-worker, using a notebook, as she exited an elevator. *Perez v. Norwegian-Am. Hosp.,*

*Inc.*, 93 F. App'x 910, 914 (7th Cir. 2004).

Eaton argues that, in the present case, Jackson's conduct lasted for seconds, and involved

minor, isolated poking occurring over just two days respectively. It entailed Jackson touching

Cooper above the waistline on October 30, 2017, and then for seconds on October 31, 2017, near

her waistline twice and once under the bottom of her bra. (Cooper Dep. at 77:15-19.) Cooper

also claims that Jackson briefly touched her breast. Eaton argues that, although inappropriate, this

conduct fails to constitute severe or pervasive conduct sufficient to support a hostile work

environment claim. Eaton points out that the interaction on October 30, 2017, was not something

Cooper felt necessary to report, instead handling it on her own. The incident on October 31,

2017, was not even first raised by Cooper, but rather was observed by Arterburn, who followed

up with Cooper and encouraged her to report to Human Resources. (Cooper Dep. at 69:17-19;

77:19-23; 91:24-92:3); (Jahr Decl. at ¶¶ 9, 12, 15, 16); (Ex. 5 at p. 2.)

In her Charge, Cooper further alleges that being forced to work with Jackson constituted

harassment. She says Jackson "followed her around, stared at her, undressed her with his eyes,

and he sneered at her with a creepy smile." She also claims Jackson sat behind her in a break room

and "hit her shoulder," which she clarified during her deposition meant that he brushed against her

shoulder while walking by. (Hiller Decl. at ¶ 11.); (Cooper Dep. at 115:20-116:12; 120:3-122:1.)

Cooper did not initially report these incidents before filing her Charge. Eaton argues that this

14

conduct is similarly insufficient to constitute a severe or pervasive workplace. *See Yodhes v. Am. United Life Ins. Co.*, No. 1:16-cv-2803-WTL-MJD, 2018 U.S. Dist. LEXIS 63495, at *22 (S.D. Ind. Apr. 16, 2018) (granting employer's motion for summary judgment, in part, because plaintiff's allegations regarding the alleged harasser staring at her were insufficient); *Nuzzi v. Bourbonnais Elementary Sch. Dist.*, 360 Fed. App'x 664, 667 (7th Cir. 2010) ("exaggerated staring . . . , which could be interpreted as sexually motivated, fall[s] far below the severity required for a cognizable sexual harassment claim."). Moreover, Eaton disciplined Jackson and enacted measures to keep Cooper and Jackson apart. Eaton addressed Cooper's later complaints about subsequent interactions, which at most involved making eye contact and one alleged brush of the shoulder, but no specific statements whatsoever by Jackson. Eaton asserts that these allegations are insufficient to show Jackson's conduct was severe or pervasive.

Eaton further argues that even had Cooper shown Jackson's conduct was objectively offensive, severe, or pervasive, her claim would nonetheless fail. Eaton contends that Cooper has failed to show Jackson's conduct was based on her gender. An "employer cannot be held liable for creating or condoning a hostile working environment unless the hostility is motivated by gender." *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 808 (7th Cir. 2001). That one employee is male and the other female, standing alone, is insufficient to support a sexual harassment claim. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 562 (7th Cir. 2016) (same). Likewise, touching and taunting is insufficient, standing alone, to prove a plaintiff was harassed based on her sex. *Smith v.*

15

*Rosebud Farm, Inc.*, 898 F.3d 747, 751 (7th Cir. 2018) (citing Lord, 839 F.3d at 561-62).

Moreover, speculation or conjecture are insufficient to defeat summary judgment. *Singer*, 593 F.3d at 533. Eaton argues that Cooper relies upon only speculation and conjecture when arguing Jackson's conduct was based on her gender. In her deposition, Cooper speculated Jackson touched her in this way because she is a woman (Cooper Dep. at 78:1-4, 8-15.) Specifically, she testified:

> Q: What facts do you rely on to support this happened because of your sex?
> A: There's no—what other facts would it be? Is he going to touch a man like that?
> . . .
> Q: I just want to make sure I understand all of the factual basis for saying this was sexual harassment. So you're saying, because you're a woman.
> A. Yes.
> Q. Anything else?
> A. Because I'm a woman—he got too comfortable. I don't know why he touched me.

(*Id.*)

"Sexual horseplay differs from sex discrimination, and Title VII covers only discriminatory conduct." *Lord*, 839 F.3d at 562. "Absent some evidence of the latter, the former is insufficient to support a Title VII claim." *Id.*

Eaton argues that Cooper has offered no evidence that Jackson's conduct was gender-based. Eaton points out that Cooper testified she and Jackson had a cordial relationship prior to the two incidents in October 2017. (Cooper Dep. at 64:20-22.) She further testified Jackson appeared to believe his conduct constituted a joke. (Cooper Dep. at 70:6-71:17) Specifically, Cooper testified that Jackson "laughed", "laughed again", and did not take her statements not to touch her seriously. (*Id.*) She further testified Jackson "did not listen to her the day before and he did not take her seriously and thinks this was a joke." (*Id.*) And, in fact, Jackson stated he was

"just joking around" and that he kept tapping her back or hips to get her attention. (Jahr Decl. at ¶ 19); (Hiller Decl. at ¶ 16, Ex. A at p. 2.)

Eaton also claims that Cooper's concession that Eaton adequately investigated and responded to her allegations about Jackson's conduct is dispositive. An employer is liable for coworker harassment only when it is negligent in discovering or remedying the harassment. *Loughman v. Malnati Org., Inc.*, 395 F.3d 404, 407 (7th Cir. 2005) (emphasis added); *Berry*, 260 F.3d at 811 ("If an employer takes reasonable steps to discover and rectify the harassment of its employees . . . it has discharged its legal duty."). In her deposition Cooper admitted she and Jackson were coworkers and Jackson had no supervisory authority over her. (Cooper Dep. at 63:8-16.)

Eaton claims that it promptly investigated and adequately responded to each of Cooper's allegations, including: her October 2017, January 2018, and September/October 2018 complaints. (Cooper Dep. at 87:20-88:11, 89:3-10, 144:7-9); (Arterburn Decl. at ¶¶ 8-18, 26-27, 34) (Jahr Decl. at ¶¶ 10-24, 26-34, 34-57, 62-68); (Hiller Decl. at ¶¶ 15-20.) Cooper conceded in her deposition that Eaton adequately investigated and responded to her claims about Jackson. (Cooper Dep. at 87:20-88:20, 89:3-10.)

In her deposition, Cooper alleged Jackson further harassed her in October 2018, long after Cooper filed her Charge. Specifically, Cooper alleged that on October 2, 2018, Jackson was present in the Assembly Department to retrieve a tool, at which time he generally looked at her, which Cooper reported to VanBuskirk. (Cooper Dep. at 111:6-112:13-25.); (Jahr Decl. at ¶¶ 62-67.) Jahr investigated, and found Jackson was in the Assembly Department for proper reasons, but she coached Jackson on the procedure to acquire tools outside of his department. (Exhibit 3

at ¶ 68); (Exhibit G to Jahr Dec.) Cooper, however, never amended her Charge to include the foregoing incident as part of her claim before the EEOC.

Eaton points out that Title VII plaintiffs are precluded from filing lawsuits for claims not included in an EEOC charge. *Boyd v. Toyota Motor Mfg., Ind., Inc.*, 459 F. Supp. 2d 781, 783 (S.D. Ind. 2006) (dismissing plaintiff's new allegations). This exhaustion requirement serves the purposes of providing the employer with notice of the allegedly improper conduct and provides both the employer and the EEOC with an opportunity to conciliate prior to court intervention. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). The inclusion of any conduct following the filing of a charge—let alone the inclusion of conduct following the filing of a lawsuit—eliminates these objectives as a matter of chronology.  *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005).

Eaton correctly notes that the failure by a plaintiff to amend her pending charge to include the allegedly new conduct renders the later-alleged conduct necessarily outside the scope of the EEOC charge. *Conner*, 413 F.3d at 680 (affirming the district court's refusal to consider claims brought subsequent to the plaintiff's EEOC charge and holding that it "would have been impossible to describe the conduct related to her December 2002 non-promotion in her EEOC charges dated November 1, 2002."); *see also Rose v. Franciscan Alliance Inc.*, Case No. 1:16-cv-03212-TWP-MJD, 2018 U.S. Dist. LEXIS 93902, at *20 (S.D. Ind. June 4, 2018) (limiting the consideration of events in granting summary judgment for the employer to those instances of alleged discrimination occurring prior to the filing of the plaintiff's EEOC charge); *Ammons v. Metro. Water Reclamation Dist. of Greater Chi.*, Case No. 08 C 5663, 2011 U.S. Dist. LEXIS 28707, at *7-15 (N.D. Ill. Mar. 18, 2011) (holding post-charge allegations that the

18

employer failed to reasonably accommodate the plaintiff were outside the scope of the plaintiff's EEOC Charge); *Richardson v. Swift Transp. Co. of Ariz.*, LLC, No. 17 C 4046, 2018 U.S. Dist. LEXIS 64240, at *10-11 (N.D. Ill. Apr. 17, 2018) (barring the plaintiff's constructive discharge claim because it occurred following the filing of her EEOC charge and complaint and that, despite being based on the same conduct, the claim's "timing means that it is necessarily outside the scope of the Charge."). Here, Cooper's claim regarding the October 2, 2018, incident, which happened approximately seven months after Jackson voluntarily transferred out of the Assembly department on January 29, 2018 (Ex. 2 at ¶ 35), was never included as a part of her EEOC claim, which was dismissed by the EEOC on November 30, 2018. Therefore these claims will be stricken.

The Court will now discuss Eaton's motion to strike Cooper's affidavit. Eaton seeks to strike or set aside the paragraphs of the affidavit that contradict Cooper's sworn testimony and the paragraphs that seek to introduce new evidence after the close of discovery.

Eaton first points out that Cooper filed an appendix regarding her Statement of Genuine issues which includes six supporting exhibits. The Statement and Exhibits total over 200 pages. Eaton argues that Cooper at no point identifies how any of these documents conflict with Eaton's statement of facts. Eaton notes that failure to identify disputes of fact in response to a motion for summary judgment is a violation of Local Rule 56-1(b)(2), and this Court has found that such violations place an undue burden and prejudice not only on the defendant but also the Court. *Anchor Health Sys. v. Radowski*, No. 2:16-cv-65-TLS, 2020 U.S. Dist. LEXIS 71273 at *6-8 (N.D. Ind. Apr. 22, 2020) (striking plaintiff's factual assertions for failing to identify material facts in dispute in accordance with Local Rule 56-1(b)(2) and adopting defendant's facts). Eaton is correct. However, as the Court strongly prefers to decide issues on the merits and not on

19

technical briefing requirements, the Court will not strike the Affidavit and exhibits on this basis. Plaintiff's counsel should take note, however, that the Court is not likely to be this lenient in the future.

Eaton further asserts that, in addition to not complying with Local Rule 56-1, Cooper's affidavit largely contradicts her sworn deposition testimony in an attempt to create a genuine issue of fact. Specifically, Eaton takes issue with the statements in paragraphs 3, 5, 8, 9, 10, 11, 12, 13, and 14 of Cooper's affidavit.

"[I]t is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony." *Richardson v. Bonds*, 860 F.2d 1427, 1433 (7th Cir. 1988) (internal quotations omitted) (citing *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir. 1987); *Adelman-Tremblay v. Jewel Cos., Inc.*, 859 F.2d 517, 521 (7th Cir. 1988); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861-62 (7th Cir. 1985); *Camfield Tires, Inc. Michelin Tire Corp.*, 719 F.2d 1361, 1366 (8th Cir. 1983); *Selsor v. Callaghan & Co.*, 609 F. Supp. 1003, 1010 (N.D. Ill. 1985). Furthermore, "[a]ttempts to manufacture issues of fact in response to a motion for summary judgment may be a basis for sanctions." *Richardson*, 860 F.2d at 1433.

In Paragraph 3, Cooper recounts her October 30 and October 31, 2017 interactions with Jackson, where she alleges he touched her. (Cooper Aff.  at ¶ 3). In the affidavit, Cooper states that Jackson "moved his hand underneath my breast."( *Id*.) Eaton argues that at her deposition, Cooper was questioned with extreme detail about where exactly she was claiming Jackson touched her, and she stated that Jackson never grabbed her breasts. (Cooper Dep. at 75:15-19). Cooper, in response, notes that in her deposition she did unequivocally state that Mr. Jackson

touched her breasts.  (Cooper Dep. at 73:1-7).  Cooper also testified that Mr. Jackson used two

fingers to lift up the side of her bra, but that he didn't grab her breasts. (Cooper Dep. at 75:15-

25). The Court has carefully reviewed the deposition testimony at issue and finds it a bit confusing

because the witness was pointing to different areas of her body, which doesn't translate well in a

written deposition.  Additionally, the male attorney questioning Cooper was unsure what to call

the different parts of a bra, so the entire line of questioning reads like a comedy of errors.

However, as it appears clear that Cooper testified that Mr. Jackson touched her breasts, but did

not grab them, the Court will not strike Paragraph 3.[1]

With respect to Paragraph 5 of the affidavit, Cooper states that on November 6, 2017,

Jackson was permitted to "work around" her and that her supervisor, Becky Arterburn, told her

she would have to work with Jackson. (Cooper Aff.  at ¶ 5). At her deposition, Cooper testified

that there were always three to four other employees working between her and Jackson. (Cooper

Dep. at 105:19-21). Cooper later asked that the number of employees working between her and

Jackson be expanded to seven and that after the request was made she never worked closer than

seven employees away from Jackson.( *Id*. at 106:6-9, 107:4-7). Eaton argues that Cooper never

testified that her supervisor told her that she would have to work with Jackson. Instead, she

claims that her Union Steward, John Cain, explained the situation to Arterburn and that Jackson

and Cooper were not to be placed on the same line. (Cooper Dep. at 101:4-9).  Cooper has not

addressed this argument.   As Paragraph 5 contradicts Cooper's deposition testimony as well as

the declarations of several of Eaton's uncontested witnesses, the Court will strike Paragraph 5.

---

[1] Cooper states in her brief that Mr. Jackson "cupped" her breasts.  This allegation is not
supported anywhere in the record and will be ignored.

In Paragraph 8 of her affidavit, Cooper makes similar statements to those in Paragraph 5. Specifically, Cooper claims that "Human Resources made me continue to work with Mr. Jackson." (Cooper Aff. at ¶ 8). As noted above, Cooper herself admitted that at no point after Jackson's suspension were there fewer than three of four employees working between Cooper and Jackson. The Court will strike Paragraph 8.

In paragraph 9, Cooper states that the Step 1 write-up she received in April 2018 was "unwarranted and fake and phony." (Cooper Aff. at ¶ 9). But when questioned about her Step 1 at her deposition, Cooper admitted that she not only refused to give Josh Paden, a coworker, a part he needed to do his job but also yelled at John Cain, a coworker and Union Steward. (Cooper Dep. at 146:9-14, 147:2-16). Specifically, on December 16, 2017, Paden requested a product part from Cooper, and she refused to give him the part he needed to do his job. (Cooper Dep. at 147:13-16). Cooper then questioned Paden, asking him if he was a man or a kid. (*Id.* at 147:17-19).

On February 1, 2018, it was reported that Cooper used abrasive language towards John Cain. (Cooper Dep. at 146:3-8). Cooper testified that she considered "abrasive language" to mean "cussing someone out." (*Id.* at 146:11-12). Cooper did not "recall cussing him out" but she did recall yelling at Cain. (*Id.* at 146:11-12, 147:2-4). Based on Cooper's actions with these coworkers, she was issued a Step 1 write-up for violating Eaton's value of respect, and Cooper agreed that her conduct violated this value. (Cooper Dep. at 148:2-8). Accordingly, Paragraph 9 will be stricken.

In paragraph 10, Cooper contends that the Step 1 write-up was retaliation for her complaints about Jackson's alleged behavior and complaints about her supervisor allegedly

making her work with Jackson. (Cooper Aff. at ¶ 10). As discussed above, Cooper was never required to work with Jackson and, in fact, never worked any closer than three or four employees, and at times worked as many as seven employees away from Jackson. (Cooper Dep. at 105:19 – 106:9, 107:3-7,107:18-21,142:12-15). Moreover, Cooper admitted the investigation that ultimately led to the Step 1 write-up was prompted by complaints Eaton received about Cooper from her coworkers.(*Id.* at 154:4-6). Cooper further alleges that she was never called into Human Resources to discuss the allegations underlying her Step 1 write-up, referring to the investigation as a "sham." (Cooper Aff. at ¶ 11). However, during her deposition, Cooper admitted that Emily Jahr, the Human Resources Manager, asked Cooper about the allegations that she had yelled at John Cain and refused a part to Josh Paden. (Cooper Dep. at 152:2-20). Furthermore, when Cooper questioned the legitimacy of the investigation by asking Jahr if she would speak with more witnesses, Jahr agreed and interviewed the individuals Cooper had identified. (*Id*. at 152:21 – 153:25). Cooper testified that the investigation was handled properly.( *Id*. at 153:23-25). As Paragraphs 10 and 11 of Cooper's Affidavit directly contradicts her deposition testimony, they will be stricken.

Cooper seeks to introduce new allegations against Eaton in Paragraphs 13 and 14 of her affidavit. Specifically, she raises new instances of alleged harassment by Jackson. In Paragraph 13, she discusses an interaction that occurred in November 2019—Jackson parking his car near Cooper. (Cooper Aff. at ¶ 13). In paragraph 14, Cooper discusses an interaction that occurred in July 2020—Jackson clocking out at the same time as Cooper but at a different time clock and then walking out of the building behind her. (Cooper Aff. at ¶ 14). Eaton points out that neither of these instances described in Paragraphs 13 and 14 are included as part of Cooper's EEOC

Charge, nor were they included as part of her Complaint. As such, Cooper cannot raise them now as part of her Response. *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (holding that it is a condition precedent that a plaintiff's allegations must be presented in the EEOC Charge and to allow allegations outside of the Charge "would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge."). Accordingly, Paragraphs 13 and 14 will be stricken.

Returning now to the motion for summary judgment, this Court finds that Cooper has failed to establish a claim of sexual harassment.  First, there is no evidence that her work environment was offensive or that Jackson's conduct was severe or pervasive.  While Jackson's conduct was inappropriate, and may have been annoying, it clearly did not rise to the level to support a claim for sexual harassment.  *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009); *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 882 (7th Cir. 2018; *Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir. 1998).

Additionally Cooper has failed to show that Jackson's behavior towards her was because of her gender.  Cooper merely assumes that Jackson was sexually motivated because he is male and she is female.  However, as the cases make clear, this is insufficient.  *Oncale v. Sundowner Offshore Servs*, 523 U.S. 75, 80 (1998); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 562 (7th Cir. 2016).  Cooper, in her response brief, claims that Jackson was acting like a "sexual pervert" whose actions were "motivated by his sexual desire for her".  However, there is no evidence that Jackson's actions were anything more than playful antics towards a co-worker with which he had a cordial relationship.

Moreover, Cooper has failed to show a basis for employer liability.  It is undisputed that

Eaton promptly disciplined Jackson and then separated Cooper and Jackson so that Jackson was unable to touch Cooper.  Cooper testified in her deposition that Eaton adequately investigated and responded to her claims about Jackson.

For all the above reasons, summary judgment will be granted in favor of Eaton on Cooper's sexual harassment claim.

Next, Eaton seeks summary judgment on Cooper's retaliation claim. To establish retaliation, Cooper must show "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) a causal connection between the two." *Moser v. Ind. Dep't of Corrs.*, 406 F.3d 895, 903 (7th Cir. 2005). Cooper limits her retaliation claims to Arterburn and Jahr. (Cooper Dep. at 139:12-18.) Eaton claims that Cooper has failed to establish she suffered a cognizable adverse employment action and has failed to show a causal connection.

Eaton contends that Cooper has failed to show she suffered an adverse employment action. A materially adverse action "must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (internal quotation marks and citation omitted). However, not "everything that makes an employee unhappy is an actionable adverse action." ., 89 F.3d 437, 441 (7th Cir. 1996). Generally speaking, adverse employment actions "fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive

discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011).

Cooper contends the issuance of the Step 1 Verbal Warning, and subsequent "Note to File," constituted an adverse employment action. (Cooper Dep. at 154:4-24.) She further alleges she was forced to work alongside Jackson. (Cooper Dep. at 139:9-140:6.) Eaton argues that neither of these actions constitute an adverse employment action.

Eaton responds that the written warning did not affect Cooper's terms of employment. As discussed above, on April 4, 2018, Eaton issued Cooper a Step 1 Verbal Warning for violating its plant rules. After Cooper filed a grievance regarding the Verbal Warning, Eaton downgraded the Verbal Warning to a Note to File. A written warning that does not result in a "quantitative or qualitative change in the terms and conditions of employment" does not constitute an adverse employment action. *Lauth v. Covance, Inc.*, 863 F.3d 708, 717 (7th Cir. 2017); *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014) (affirming the district court's grant of summary judgment for employer noting, in part, that negative performance reviews and performance improvement plans are not adverse employment actions).

Cooper contends the Step 1 Verbal Warning put her job in jeopardy. (Cooper Dep. at 160:18-23.) But, neither the Step 1 Verbal Warning, nor the Note to File caused Cooper to be suspended, demoted, terminated, lose pay, lose benefits, or suffer any other change in the terms of her employment. (Arterburn Decl. at ¶ 40); (Jahr Decl. at ¶¶ 58, 61.) Moreover, though "the possibility of discipline can be stressful . . . [it is] not enough to support a claim for retaliation." *Poullard*, 829 F.3d at 856 (citing *Dunn v. Washington County Hospital*, 429 F.3d 689, 692-93 (7th Cir. 2005) ("dark hints of future adverse employment action were not themselves adverse employment actions for Title VII retaliation purposes.") (internal quotation marks omitted). As

such, Cooper's Step 1 Verbal Warning / Note to File is insufficient to constitute an adverse employment action.

Eaton also argues that the possibility that Cooper might have worked near Jackson is insufficient to constitute an adverse employment action. As discussed, Cooper contends she was compelled to work alongside Jackson, which she contends constituted an adverse employment action. In certain circumstances, an employee's close proximity to her alleged harasser may constitute an adverse employment action. *Adusumilli*, 164 F.3d at 362; *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 536 n.18 (7th Cir. 1993)*; see also Brownlee v. Catholic Charities of the Archdiocese of Chi.*, No. 16-cv-665, 2020 U.S. Dist. LEXIS 34216, at *17 (N.D. Ill. Feb. 28, 2020). In *Adusumilli*, the court found that the alleged harasser had not engaged in sexual harassment and thus his presence could not constitute harassment. 164 F.3d at 362. In *Saxton*, the court found the employer's remedy of moving the alleged harasser to another department was an adequate remedy and, thus, the alleged harasser's presence was insufficient to support plaintiff's claim. 10 F.3d at 536 n. 18. In *Brownle*e, the Court, citing *Adusumill*i and *Saxton*, noted the "inquiry focuses on how, if at all, the harasser's presence in the workplace affected the terms and conditions of plaintiff's employment." 2020 U.S. Dist. LEXIS 34216, at *17.

This Court has held that Jackson's conduct did not constitute sexual harassment under Title VII. Moreover, Eaton's separation of Cooper and Jackson was adequate, and Jackson's presence did not affect Cooper's terms and conditions of employment. Cooper agreed with the separation between her and Jackson by four employees (Cooper Dep. at 106:3-5); (Jahr Decl. at ¶ 26), and later by seven employees. (Cooper Dep. at 106:6-9); (Jahr Decl. at ¶¶ 31-32.) She acknowledged this separation was an adequate remedy (Cooper Dep. at 89:3-10), and she admits

she and Jackson were, in fact, always so separated. (Cooper Dep. at 142:12-15.) As such, Cooper cannot show she suffered an adverse employment action based on Jackson's presence.

Eaton further contends that Cooper has failed to show a causal connection between any protected activity and any alleged adverse employment actions and has failed to show that Arterburn retaliated against her. Cooper speculates Arterburn retaliated against her for filing the sexual harassment complaint, requesting coworkers be placed in between her and Jackson, and for filing a grievance against Arterburn. (Cooper Dep. at 139:12-140:1.) Cooper alleges Arterburn retaliated against her by placing Jackson and her in close proximity. (Cooper Dep. at 140:2-6.) To sustain a claim of retaliation, Cooper was required to show her protected activity was "a but-for cause of the alleged adverse action by the employer." *Baker v. Blue Sky Casino, LLC*, No. 4:16-cv-00019-SEB-DML, 2018 U.S. Dist. LEXIS 53755, at *28 (S.D. Ind. Mar. 30, 2018) (citing *Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013)*; Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 828 n.1 (2014)). Here, Cooper has no evidence whatsoever that Arterburn was involved in the complaint brought by her own peers. Further, the result of the investigation did not constitute an adverse action, either as a Step 1 Verbal Warning or the reduced Note to File.

Moreover, Cooper acknowledges Eaton had a legitimate, nondiscriminatory reason for issuing her a Step 1 verbal warning. In *Baker*, the Court found the employer had proffered a legitimate explanation for its adverse employment action against the plaintiff. 2018 U.S. Dist. LEXIS 53755, at *30. Specifically, it found the plaintiff had violated her employer's policies. *Id.* The plaintiff did not dispute discipline would have been appropriate for such a violation. *Id.* The plaintiff, however, disputed whether she violated the company policy. *Id*. In the present case,

Cooper concedes her coworkers complained about her conduct. (Cooper Dep. at 143:20-22.) She agrees Jahr investigated these complaints and handled the investigation properly. (Cooper Dep. at 144:7-9, 153:11-154:1.) She also admits she yelled at Cain. (Cooper Dep. at 148:6-13.) As such, Cooper cannot show that Eaton's reason for issuing the Step 1 was pretextual. *Baker*, at 31 (noting that pretext requires more than mere faulty reasoning).

More importantly, though, Cooper has no admissible evidence to show that Arterburn was involved, in any way, to the Step 1 Verbal Warning. (Cooper Dep. at 158:5-10.) Rather, she merely speculates that Arterburn was connected to the Step 1 Verbal Warning. Cooper receives the benefit of reasonable inferences, but she cannot rely upon inferences supported by mere speculation or conjecture. *Singer*, 593 F.3d at 533. Self-serving generalizations lacking factual support in the record are insufficient. *Taylor*, 2002 U.S. Dist. LEXIS 14308, *16-18, and n. 4 (N.D. Ill. Aug. 2, 2002) (citing *Albiero*, 246 F.3d at 833; *Slowiak*, 987 F.2d at 1295).

As such, Cooper has failed to show a causal connection between her purportedly protected activity and her allegations of adverse employment actions against Arterburn.

Eaton also argues that Cooper has failed to show that Jahr retaliated against her. As noted above, Cooper believes Jahr retaliated against her for filing the sexual harassment complaint, requesting coworkers be placed in between her and Jackson, and for filing a grievance against Arterburn. (Cooper Dep. at 139:17-18.) Cooper appears to contend Jahr retaliated by way of the Step 1 Verbal Warning. Cooper has adduced no evidence that Jahr instituted the investigation in response to her protected activity. And, as discussed above, Cooper cannot show a but for causal connection between the Step 1 and protected activity. *Baker*, 2018 U.S. Dist. LEXIS 53755, at *28; *see also Rundle v. Vill. of Round Lake Beach*, No. 99 C 5253, 2001 U.S. Dist. LEXIS

29

18881, at *35-36 (N.D. Ill. Nov. 9, 2001).

Here, as previously stated, Cooper acknowledges the investigation leading to the Step 1 was triggered by her own peers' complaints (Cooper Dep. at 143:20-22); Jahr investigated these complaints and conducted additional witness interviews at Cooper's behest (Ex. 1 at 144:7-9, 153:8-10); and her conduct included yelling. (Cooper Dep. at 148:6-13) As such, Cooper has failed to show a causal connection between her protected activity and any subsequent disciplinary action, the level of which did not constitute an adverse action. For all of the reasons stated above, this Court finds that Eaton is entitled to summary judgment on Cooper's retaliation claim.

Conclusion

On the basis of the foregoing, Eaton's motion to strike [DE 36] is hereby GRANTED IN PART AND DENIED IN PART.  Further, Eaton's motion for summary judgment [DE 21] is hereby GRANTED.


 Entered: October 30, 2020.


                                        s/ William C.  Lee
                                        William C. Lee, Judge
                                        United States District Court